STATE OF NORTH CAROLINA v. NATHAN WAYNE BOWIE

---

STATE OF NORTH CAROLINA v. WILLIAM BARFIELD BOWIE

No. 50A93

(Filed 5 May 1995)

### 1. Criminal Law § 1362 (NCI4th)— first-degree murder—sentencing—mitigating circumstances—age of defendant—not submitted

There was no error in a first-degree murder sentencing hearing where the trial court failed to submit the statutory mitigating circumstance of the age of defendant Nathan Bowie. The evidence does not support a finding that this defendant's intellectual and emotional development was less than normal in that he was placed in a foster home at twelve years of age; he then developed at a normal rate, graduated from high school and took classes at a community college; he related well to other students and had many friends; his teachers, coaches, and principal testified that he was polite, cooperative, and able to handle criticism and follow the rules; and his social worker found him trustworthy enough that she lent him $2,000 to purchase a truck for which he regularly made payments.

**Am Jur 2d, Criminal Law §§ 598 et seq.**

### 2. Criminal Law § 21 (NCI4th)— first-degree murder—motion for psychiatric exam denied—no error

There was no error in a first-degree murder prosecution in the denial of defendant William Bowie's motion for a psychiatric examination to determine whether he was competent to stand trial. Defendant's attorney did not set forth in the motion any conduct by the defendant that led him to make the motion; N.C.G.S. § 15A-1002(a) provides that a motion which questions the defendant's ability to proceed shall detail the specific conduct that leads the moving party to question defendant's capacity to proceed.

**Am Jur 2d, Criminal Law §§ 65 et seq.**

**Validity and construction of statutes providing for psychiatric examination of accused to determine mental condition. 32 ALR2d 434.**

3. **Homicide § 706 (NCI4th)— first-degree murder—no instruction on voluntary manslaughter—conviction for first-degree murder—harmless error**

Even if there was sufficient evidence to support an instruction on voluntary manslaughter in a first-degree murder prosecution, the failure to give the instruction was harmless error in light of the conviction for first-degree murder.

**Am Jur 2d, Homicide §§ 529 et seq.**

4. **Evidence and Witnesses § 920 (NCI4th)— first-degree murder—absent witness—testimony by officer as to witness's mother's statement—not hearsay**

There was no error in a first-degree murder prosecution in the admission of testimony by an officer that the mother of an absent witness had said that the witness had moved and that she did not know where the witness was. The testimony was admissible to prove the difficulty of finding the witness and was not hearsay when used for that purpose. The prosecutor's *lapsus linguae* in stating that the testimony was offered for the truth of the matter did not convert nonhearsay testimony to hearsay and, in any event, the testimony was so peripheral that it could not have prejudiced defendants.

**Am Jur 2d, Evidence §§ 664, 668 et seq.**

5. **Evidence and Witnesses § 981 (NCI4th)— first-degree murder—statement of unavailable witness—admissible**

There was no error in a first-degree murder prosecution where the court admitted the statement of an absent witness to officers. The evidence showed that the witness made a statement to officers and moved to Philadelphia; the prosecutor filed a petition and the court entered a motion several weeks before the trial that the witness be taken into custody and delivered to a North Carolina officer to assure her attendance at trial; an officer went to Philadelphia a few days before the trial and went to the address he had been given with an officer of the Philadelphia police department; the witness's mother told them that the witness had moved and that she did not know the new address or telephone number; and the officers searched the house but could not find the witness. The court could conclude from this evidence that the witness was absent from trial and that the State was

unable to secure her presence by process or other reasonable means. N.C.G.S. § 8C-1, Rule 804(a)(5).

**Am Jur 2d, Evidence §§ 697-700.**

6. **Evidence and Witnesses § 1268 (NCI4th)— first-degree murder—confession—Miranda rights not repeated**

The trial court did not err in a first-degree murder prosecution by admitting defendant William Bowie's confession where defendant was given *Miranda* warnings and questioned by one detective and contended that he should have been advised of his rights again before being questioned by the second detective after a ten to fifteen minute break. Although defendant contended that the court's order admitting the confession applied only to the statements taken by the first detective, each of the two detectives stayed in the interrogation room throughout the questioning of the defendant and there was only one interview.

**Am Jur 2d, Criminal Law § 797; Evidence §§ 749, 750.**

7. **Evidence and Witnesses § 1278 (NCI4th)— first-degree murder—confession—waiver of rights—totality of circumstances**

Although a defendant in a first-degree murder prosecution contended that the totality of circumstances surrounding his statement, the presence of psychological coercion, and his condition show that his statement should not have been admitted, the court found based on substantial evidence that no threats or promises induced defendant to make his statement, that defendant was not under the influence of alcohol, was not in need of medical attention, and did not request food or beverage, and these findings are based on substantial evidence and are binding.

**Am Jur 2d, Criminal Law § 797; Evidence §§ 749, 750.**

8. **Criminal Law § 427 (NCI4th)— first-degree murder—prosecutor's argument—defendant's failure to testify—curative instruction**

There was no error in a first-degree murder prosecution where the prosecutor commented in his argument to the jury on defendant's failure to testify, defense counsel objected, and the court instructed the jury not to consider the statement of counsel and that defendant had no obligation to offer evidence. Although defendant contended that this instruction was insufficient, it met

the requirements of *State v. Reid*, 334 N.C. 551 and *State v. McCall*, 286 N.C. 472.

**Am Jur 2d, Trial §§ 577-587.**

**Comment or argument by court or counsel that prosecution evidence is uncontradicted as amounting to improper reference to accused's failure to testify. 14 ALR3d 723.**

**Violation of federal constitutional rule *(Griffin v. California)* prohibiting adverse comment by prosecutor or court upon accused's failure to testify, as constituting reversible or harmless error. 24 ALR3d 1093.**

**Failure to object to improper questions or comments as to defendant's pretrial silence or failure to testify as constituting waiver of right to complain of error—modern cases. 32 ALR4th 774.**

9. **Criminal Law § 1373 (NCI4th)— first-degree murder— death sentences—not disproportionate**

There was no error in two death sentences where the evidence supports the findings of the aggravating circumstances, the sentences were not imposed under the influence of passion, prejudice or any other arbitrary factor, and the sentences of death were not excessive or disproportionate to the penalties imposed in similar cases. Although the murders in this case were not as shocking for their brutality or rapacity as those in many cases, the Supreme Court was impressed with the calculated nature of the killings and the defendants' wanton disregard for the value of human life.

**Am Jur 2d, Criminal Law § 628.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed or carried out. 90 L. Ed. 2d 1001.**

**Validity of death penalty, under Federal Constitution, as affected by consideration of aggravating or mitigating circumstances—Supreme Court cases. 111 L. Ed. 2d 947.**

Justices LAKE and ORR did not participate in the consideration or decision of this case.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing two sentences of death for each defendant by Ferrell, J., at the 11 January 1993 Criminal Session of Superior Court, Catawba County, upon jury verdicts of guilty of first-degree murder. Heard in the Supreme Court 14 September 1994.

Each of the defendants was tried in one action on two counts of first-degree murder. The jury found both defendants guilty on each count as charged. The evidence showed that Nelson Shuford and Calvin Wilson were standing with some friends in a residential neighborhood of Hickory, North Carolina. The defendants, holding their hands behind their backs, approached the group, and began shooting at them. Shuford and Wilson were killed in the attack.

The jury recommended the death penalty for each defendant for both murders, which sentences were imposed.

The defendants appealed.

*Michael F. Easley, Attorney General, by William B. Crumpler, Associate Attorney General, and Joan Herre Byers, Special Deputy Attorney General, for the State.*

*W. Thomas Portwood, Jr. for defendant-appellant Nathan Wayne Bowie; Robert W. Adams for defendant-appellant William Barfield Bowie.*

WEBB, JUSTICE.

[1] The defendant Nathan Bowie first assigns error to the court's failure to submit to the jury the statutory mitigating circumstance "[t]he age of the defendant at the time of the crime." N.C.G.S. § 15A-2000(f)(7) (Supp. 1994). Nathan Bowie was twenty years of age when the crime was committed. We have held that chronological age is not the determinative factor with regard to this mitigating circumstance. *State v. Oliver,* 309 N.C. 326, 307 S.E.2d 304 (1983). The defendant's immaturity, youthfulness, or lack of emotional or intellectual development at the time of the crime must also be considered. *State v. Laws,* 325 N.C. 81, 381 S.E.2d 609 (1989), *sentence vacated on other grounds,* 494 U.S. 1022, 108 L. Ed. 2d 603 (1990), *on remand,* 328 N.C. 550, 402 S.E.2d 573, *cert. denied,* 502 U.S. 876, 116 L. Ed. 2d 174, *reh'g denied,* 502 U.S. 1001, 116 L. Ed. 2d 648 (1991).

The defendant contends that this case is governed by *State v. Turner,* 330 N.C. 249, 410 S.E.2d 847 (1991), which holds that the age

circumstance should have been submitted to the jury when the evidence showed the twenty-two year old defendant had been neglected and abused as a youth, was reared by a dysfunctional mother, and was raised in a situation in which there was a significant lack of stability and guidance. In this case, Nathan Bowie presented evidence that he was twenty years of age when the crime was committed, that he was illegitimate, and that he lived in an unstable environment until he was twelve years of age. The defendant was placed in a foster home when he was twelve years of age and continued living in the foster home until he finished high school. The defendant says these factors place him within the holding of *Turner* and he must have a new sentencing hearing.

We do not believe the evidence supports a finding that the defendant's intellectual and emotional development was less than normal. Unlike the defendant in *Turner*, the defendant Nathan Bowie was placed in a foster home when he was twelve years of age. He then developed at a normal rate. He graduated from high school and took classes at a community college. He related well to other students and had many friends. His teachers, coaches, and principal testified that he was polite, cooperative, and able to handle criticism and follow the rules. His social worker found him trustworthy enough that she lent him $2,000 to purchase a truck for which he regularly made payments.

We believe this case is more like *State v. Johnson*, 317 N.C. 343, 346 S.E.2d 596 (1986), in which the defendant's foster parents testified that in their opinion the defendant was emotionally immature for his age, which was twenty-three. The foster parents, with whom the defendant had lived for two years, based their opinions on the defendant's bedwetting, emotional behavior, and being fired from his first job. The foster parents also testified to his normal physical and intellectual development and his level of experience. We held that the evidence did not require the court to submit this circumstance. The evidence in this case did not show that the defendant Nathan Bowie had not developed normally mentally or emotionally.

This assignment of error is overruled.

[2] The defendant William Bowie assigns error to the court's denial of his motion for a psychiatric examination. He contends that the denial of this motion prevented his counsel from adequately representing him at the trial. He argues that it also prevented him from presenting evidence to the jury in regard to the mitigating circumstances

"[t]he capital felony was committed while the defendant was under the influence of mental or emotional disturbance" and "[t]he capacity of the defendant to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was impaired." N.C.G.S. § 15A-2000(f)(2) and (6).

The defendant William Bowie bases this assignment of error on a motion his attorney made one month before the commencement of the trial. His attorney asked in the motion that the defendant be examined to determine whether he was competent to stand trial. He did not set forth any conduct by the defendant that led him to make the motion.

N.C.G.S. § 15A-1002(a) provides that when a motion is made which questions a defendant's ability to proceed, the "motion shall detail the specific conduct that leads the moving party to question the defendant's capacity to proceed." N.C.G.S. § 15A-1002(a) (1988). We cannot hold that it was error to deny this motion when nothing was shown to the court as to why the motion should have been granted.

This assignment of error is overruled.

[3] The third assignment of error pertains to both Nathan Bowie and William Bowie. The defendants contend that the trial court erroneously denied their request for a jury instruction on voluntary manslaughter. The court in this case submitted to the jury possible verdicts of first-degree murder, second-degree murder, and not guilty. The jury convicted the defendants of first-degree murder. "When the jury is instructed on possible verdicts for first-degree murder and second-degree murder and the jury convicts on the basis of first-degree murder, any failure to instruct on a possible verdict for manslaughter cannot be harmful to the defendant." *State v. Ginyard*, 334 N.C. 155, 160, 431 S.E.2d 11, 14 (1993); *accord State v. Shoemaker*, 334 N.C. 252, 270-71, 432 S.E.2d 314, 323-24 (1993). Even if there was sufficient evidence to support an instruction on voluntary manslaughter, which we do not decide, in light of the jury's verdict, the trial court's failure to give the instruction is harmless error.

This assignment of error is overruled.

[4] The defendants next assign error to the admission of certain testimony by Sgt. Dan Carlson, an investigating officer with the City of Hickory Police Department. Sgt. Carlson testified to his inability to find the defendant William Bowie's sister Rochelle Bowie. This was

done in order to have her declared unavailable as a witness so that her statement could be read to the jury.

Sgt. Carlson testified that in his search for Rochelle Bowie he went to the home of her mother, Ernestine Bowie, in Philadelphia, Pennsylvania. The following colloquy then occurred:

Q. After you weren't able to locate Rochelle Bowie, what, if anything, did you do?

A. We asked Ernestine Bowie if she knew where Rochelle Bowie was and she —

MR. CUMMINGS: OBJECT.

MR. PORTWOOD: OBJECT.

THE COURT: SUSTAINED as to what she may have said.

MR. PARKER: That would be offered for the truth of the matter, not —

THE COURT: All right, sir.

Q. What did she say?

MR. CUMMINGS: OBJECT.

MR. PORTWOOD: OBJECT.

THE COURT: Answer, sir.

A. Ernestine Bowie advised us that Rochelle Bowie had moved out Saturday prior to us arriving there and that she had moved in with a girlfriend. We had asked her what the girlfriend's name was. Ernestine Bowie advised us that she did not know the girlfriend's name, telephone number, or address as to where she was.

This testimony by Sgt. Carlson as to what Ernestine Bowie told him was admissible to prove the difficulty of finding Rochelle Bowie. When used for this purpose it was not hearsay. N.C.G.S. § 8C-1, Rule 801(c) (1992). The defendant contends that because the prosecuting attorney said this testimony was "offered for the truth of the matter," we should treat this statement as if it is hearsay and determine whether it is admissible as an exception to the hearsay rule.

This statement by the prosecuting attorney, which may have been a *lapsus linguae*, does not convert nonhearsay testimony to hearsay testimony. In any event, the testimony of Sgt. Carlson was so periph-

eral to the case that its admission could not have prejudiced the defendants.

This assignment of error is overruled.

[5] The defendants next assign error to the admission of hearsay testimony in the form of a statement made by Rochelle Bowie to the investigating officers. The State offered this testimony as an exception to the hearsay rule allowed under N.C.G.S. § 8C-1, Rule 804(b)(5). The defendants contend that the finding by the superior court that the witness was unavailable was not supported by the evidence. Rule 804(a)(5) provides that a witness is unavailable if "the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." N.C.G.S. § 8C-1, Rule 804(a)(5) (1992).

The evidence in this case showed that Rochelle Bowie made a statement to the officers concerning the events in regard to the crimes. She then moved to Philadelphia. Several weeks before the trial, the prosecutor filed a petition with the court pursuant to N.C.G.S. § 15A-813, the statute that governs summoning out-of-state witnesses to testify. Judge Ferrell entered an order, which included a recommendation, pursuant to the provisions of the statute, that Rochelle Bowie be taken into custody and delivered to a North Carolina officer to assure her attendance at the trial. As a result of this recommendation, rather than attempting to serve Ms. Bowie well in advance of the trial, Sgt. Carlson went to Philadelphia a few days before the commencement of the trial. Sgt. Carlson, accompanied by an officer of the Philadelphia Police Department, went to the address they had been given for Rochelle Bowie. Ms. Bowie's mother, Ernestine Bowie, told the officers that Rochelle had moved and that she did not know her daughter's new address or telephone number. The officers searched the house but could not find Rochelle Bowie.

The superior court could conclude from the above evidence that Rochelle Bowie was absent from the trial and that the State was unable to secure her presence by process or other reasonable means. This supports the finding that the witness was unavailable.

This assignment of error is overruled.

[6] The defendant William Bowie next assigns error to the admission into evidence of a confession he made to Detectives Michael Cohen and James Alexander of the Philadelphia Police Department. The

defendant objected to the admission of this confession and a *voir dire* hearing was held out of the presence of the jury.

The evidence at the *voir dire* hearing showed that the defendant William Bowie was stopped by a police officer in Philadelphia for a traffic violation. The defendant's name was put in a computer which showed he was wanted for questioning in regard to a homicide in North Carolina. The defendant William Bowie was then taken to the police station where he was questioned by Detectives Cohen and Alexander. The defendant was given the *Miranda* warnings and signed a paper waiving his right to remain silent and to confer with an attorney. The transcript shows that Detective Alexander first questioned William Bowie and then Detective Cohen questioned him. The court found facts consistent with this evidence and concluded that the defendant had waived his rights enunciated in *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694 (1966). The court ordered that the confession be admitted.

The defendant contends that there was a ten to fifteen minute break between the questioning by Detective Alexander and the questioning by Detective Cohen. He says he should have again been advised of his *Miranda* rights before the questioning by Detective Cohen. He says the court's findings on the *voir dire* hearing apply only to the statements taken by Detective Alexander and the statements taken by Detective Cohen should not have been admitted.

We disagree with the defendant's contention that the court's order admitting the confession applied only to the statements taken by Detective Alexander. The court specifically found that the defendant freely and voluntarily made statements to Detective Cohen. The court also referred to the defendant's statement as "State's Exhibit Voir Dire No. 4," which is the entire statement and not merely the first portion.

Each of the two detectives stayed in the interrogation room throughout the questioning of the defendant. There was only one interview. It was not necessary, as defendant William Bowie contends, to advise him for the second time of his *Miranda* rights when Detective Cohen began his questions. We can assume he had not forgotten them during the interview. *State v. McZorn,* 288 N.C. 417, 219 S.E.2d 201 (1975), *death sentence vacated,* 428 U.S. 904, 49 L. Ed. 2d 1210 (1976).

[7] The defendant argues finally under this assignment of error that the totality of circumstances surrounding the statement, the presence

STATE v. BOWIE

[340 N.C. 199 (1995)]

of psychological coercion, and his condition show that his statement to Detective Cohen should not have been admitted. The court found, based on substantial evidence, that no threats or promises induced the defendant to make his statement. The court also found that the defendant was not under the influence of alcohol, was not in need of medical attention and did not request food or beverage. These findings of fact are based on substantial evidence and are binding upon us. They support the conclusion that the confession was not coerced. *State v. Greene*, 332 N.C. 565, 579, 422 S.E.2d 730, 738 (1992); *State v. Richardson*, 316 N.C. 594, 598-99, 342 S.E.2d 823, 827 (1986).

This assignment of error is overruled.

[8] The defendant Nathan Bowie next assigns error to the prosecuting attorney's comment during his argument to the jury on Nathan Bowie's failure to testify. The prosecutor made the following remarks:

Mother suffered [an] addiction to drugs, made him go get the drugs for her, and he spent several weeks in a boys' home in Philadelphia while his mother recovered—received substance abuse treatment. So what? How did that affect you Nathan? Huh? Did that bother you any? Did you hear anything from him saying how it affected him?

The defense counsel objected. The court sustained the objection and instructed the jury as follows:

Do not consider the statement of counsel as to whether or not you heard him say how it affected him. Do not deliberate on that, members of the jury. Defendant has no obligation to offer any evidence in this regard from himself.

The defendant Nathan Bowie argues that this instruction consisting of only five lines was not sufficient to cure the comment. He relies on *State v. Lindsay*, 278 N.C. 293, 179 S.E.2d 364 (1971), in which we approved a much longer instruction. The State contends this statement by the prosecuting attorney was not a comment on Nathan Bowie's failure to testify, but was only an argument on the absence of any evidence from the defendant showing how his mother's drug addiction affected him. *State v. Mason*, 315 N.C. 724, 340 S.E.2d 430 (1986). Assuming the argument was a comment on the defendant Nathan Bowie's failure to testify, the court cured any error by its action in sustaining the objection and giving the curative instruction.

In *State v. Reid*, 334 N.C. 551, 556, 434 S.E.2d 193, 197 (1993), we said a comment by the prosecutor on a defendant's failure to testify may be cured by an instruction from the court that the comment was improper followed by an instruction not to consider the failure of the defendant not to offer himself as a witness. *See also State v. McCall*, 286 N.C. 472, 487, 212 S.E.2d 132, 141 (1975). The instruction given in this case meets the requirements of *Reid* and *McCall*. The instruction not to consider the argument in effect told the jury it was improper. The instruction that he had no obligation to offer evidence from himself told the jury not to consider the failure of the defendant to testify.

This assignment of error is overruled.

We find no error in the trial or sentencing hearing.

[9] Finding no error in the trial, it is our duty to determine (1) whether the record supports the jury's finding of aggravating and mitigating circumstances; (2) whether any of the sentences were imposed under the influence of passion, prejudice, or any other arbitrary factor; and (3) whether any of the sentences of death is excessive or disproportionate to the penalty imposed in similar cases. N.C.G.S. § 15A-2000(d)(2) (1988); *State v. Robbins*, 319 N.C. 465, 356 S.E.2d 279, *cert. denied*, 484 U.S. 918, 98 L. Ed. 2d 226 (1987). An examination of the record reveals the evidence supports the findings of the aggravating and mitigating circumstances. Neither of the defendants contends otherwise. We also hold that the sentences were not imposed under the influence of passion, prejudice or any other arbitrary factor.

Our next task is to determine whether either of the sentences imposed is excessive or disproportionate to the penalties imposed in similar cases. As to Nathan Bowie, the jury found in both cases two aggravating circumstances: (1) did the defendant kill the victim while he was an aider or abettor of a person who was attempting to kill another person, and (2) was the murder for which he was convicted part of a course of conduct which included other crimes of violence against another person. N.C.G.S. § 15A-2000(e)(5) and (11). In both cases against the defendant William Bowie, the jury found the two aggravating circumstances found in Nathan Bowie's case and found as an additional aggravating circumstance that he had previously been convicted of a felony involving the use or threat of violence. N.C.G.S. § 15A-2000(e)(3).

**STATE v. BOWIE**

[340 N.C. 199 (1995)]

In the case of Nathan Bowie, fifteen mitigating circumstances were submitted to the jury. One or more jurors found ten of them, including one statutory mitigating circumstance, that the defendant had no significant history of prior criminal activity. N.C.G.S. § 15A-2000(f)(1). In William Bowie's case, one or more jurors found nine of the sixteen mitigating circumstances submitted. None of them were statutory mitigating circumstances.

This Court gives great deference to a jury's recommendation of a death sentence. *State v. Quesinberry*, 325 N.C. 125, 145, 381 S.E.2d 681, 694 (1989), *sentence vacated on other grounds*, 494 U.S. 1022, 108 L. Ed. 2d 603, *on remand*, 328 N.C. 288, 401 S.E.2d 632 (1991). In only seven cases have we found a death sentence disproportionate. *State v. McCollum*, 334 N.C. 208, 240-42, 433 S.E.2d 144, 162-63 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895, *reh'g denied*, —— U.S. ——, 129 L. Ed. 2d 924 (1994). In several cases which have characteristics similar to this case, we have affirmed the imposition of the death penalty.

In *State v. McHone*, 334 N.C. 627, 646, 435 S.E.2d 296, 307 (1993), *cert denied*, —— U.S. ——, 128 L. Ed. 2d 220 (1994), there were multiple killings. In *State v. Gardner*, 311 N.C. 489, 514, 319 S.E.2d 591, 607 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985), the killings were cold-blooded, calculated and senseless. In *State v. Gibbs*, 335 N.C. 1, 72, 436 S.E.2d 321, 362 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 881 (1994), the defendants employed a calculated plan of attack. In *State v. Hutchins*, 303 N.C. 321, 357, 279 S.E.2d 788, 810 (1981), the defendant's course of conduct amounted to a wanton disregard for human life. In *State v. Robinson*, 336 N.C. 78, 137, 443 S.E.2d 306, 336 (1994), there was no evidence of remorse by the defendants. All these characteristics are present in this case.

The murders in this case are not as shocking for their brutality or rapacity as are those in many of the cases that come to this Court, but we are impressed with the calculated nature of the killings and the defendants' wanton disregard for the value of human life. The defendants planned the killings over a period of at least nine hours and apparently killed to avenge the loss of some jewelry the victims allegedly had taken from a relative of the defendants. When the killings in this case are compared to those in the cases listed above in which death sentences were imposed, the similarity of the characteristics of the cases convinces us that the penalties imposed in this case

were not excessive or disproportionate to the penalties imposed in similar cases, considering the crimes and the defendants.

We hold that the defendants received trials and sentencing hearings free of prejudicial error; that the aggravating circumstances found were supported by the evidence; that the sentences of death were not imposed under the influence of passion, prejudice or any other arbitrary factor; and that the sentences of death are not excessive or disproportionate to the penalties imposed in similar cases.

NO ERROR.

Justices LAKE and ORR did not participate in the consideration or decision of this case.