STATE OF NORTH CAROLINA v. CHE USEF FLETCHER, Defendant

No. COA96-330

(Filed 4 March 1997)

### 1. Indigent Persons § 27 (NCI4th)— state-funded investigator—prohibition of surveillance—no abuse of discretion

The trial court did not abuse its discretion in prohibiting a state-funded private investigator for the indigent defendant from conducting surveillance of an alleged rape and sexual assault victim to establish evidence that the victim was a regular user of drugs and a prostitute who performed sexual acts in exchange for drugs or money since there was no showing that the evidence sought by defendant was obtainable only through surveillance, and since evidence of prostitution does not necessarily counter the victim's allegations.

**Am Jur 2d, Criminal Law § 771.**

**Right of indigent defendant in state criminal case to assistance of investigators. 81 ALR4th 259.**

### 2. Indigent Persons § 27 (NCI4th)— state-funded investigator—prohibition of surveillance—equal protection

The trial court's order prohibiting defendant's state-funded investigator from conducting surveillance of an alleged rape and sexual assault victim to find evidence that she was a prostitute did not violate defendant's right to equal protection of the law.

**Am Jur 2d, Criminal Law § 771.**

**Right of indigent defendant in state criminal case to assistance of investigators. 81 ALR4th 259.**

**3. Criminal Law § 478 (NCI4th Rev.)— representation by several attorneys—comment by prosecutor—curative instruction**

The trial court cured any error related to the prosecutor's improper reference during cross-examination of defendant to the fact that defendant had been represented by several attorneys with a curative instruction given to the jury after defendant's counsel objected to the prosecutor's statement.

**Am Jur 2d, Trial §§ 499, 500.**

**4. Assault and Battery § 82 (NCI4th)— transferred intent— discharge of firearm into occupied residence**

The trial court did not err by instructing the jury that the intent to shoot a person is transferrable in order to satisfy the intent element of discharging a firearm into the occupied property of another where the evidence tended to show that defendant intended to shoot a person but instead shot into an occupied residence.

**Am Jur 2d, Criminal Law § 131.**

**5. Criminal Law § 849 (NCI4th Rev.)—instruction—defendant's testimony—scrutiny by jury**

There was no plain error committed by the trial court where the court instructed the jury that it should scrutinize defendant's testimony carefully based on his interest in the outcome of the case.

**Am Jur 2d, Trial § 1423.**

**6. Criminal Law § 1110 (NCI4th Rev.)— sentencing—additional years—one prior misdemeanor—no abuse of discretion**

The trial court did not abuse its discretion by sentencing defendant to fourteen (14) additional years based solely on one prior misdemeanor conviction where the trial court found one mitigating factor—good character and reputation in the community—and one aggravating factor—a prior conviction for an offense punishable by more than sixty (60) days. Absent a finding of abuse of discretion, an appellate court will not disturb the trial judge's weighing of aggravating and mitigating factors.

**Am Jur 2d, Criminal Law §§ 598, 599.**

STATE v. FLETCHER

[125 N.C. App. 505 (1997)]

Appeal by defendant from order entered 8 May 1995 by Judge Orlando F. Hudson and judgment and commitments entered 1 June 1995 by Judge Anthony M. Brannon in Durham County Superior Court. Heard in the Court of Appeals 9 January 1997.

*Attorney General Michael F. Easley, by Associate Attorney General Jonathan P. Babb, for the State.*

*Jay H. Ferguson for defendant appellant.*

COZORT, Judge.

Defendant was convicted of first degree rape, two counts of first degree sexual offense, assault with a deadly weapon with intent to kill inflicting serious injury, and discharging a firearm into occupied property. His primary arguments on appeal are (1) that the trial court erred by entering an order prohibiting defendant's state-funded private investigator from conducting surveillance of the State's key witness to find evidence that she was a prostitute; and (2) that the trial court erred by instructing the jury that intent to shoot a person is transferrable to satisfy the intent element in the offense of discharging a firearm into occupied property. We find no error. The facts follow.

The State presented evidence which tended to show that on 30 September 1993, the alleged victim (hereinafter referred to as "witness"), accepted a ride home from defendant, Che Usef Fletcher. Instead of driving the witness home, however, defendant drove her to a secluded gravel road. During the drive, defendant held the witness at gun point, forced her to lie down in the car, and instructed her to remove her clothes. When the witness attempted to escape, defendant put the gun to her side and threatened to shoot her.

After reaching a secluded area, defendant ordered the witness to finish removing her clothes. He placed a gun in her mouth and made her suck on the barrel of the gun. He also made the witness perform fellatio on him. While the witness performed fellatio on defendant, defendant rubbed his gun against her breasts and threatened to shoot off her breasts. Defendant penetrated the witness both vaginally and anally.

After penetrating the witness anally, defendant told her that he was going to kill her. Defendant instructed the witness to lie down outside of the car so that he could shoot her in the back of the head. Upon exiting defendant's car and seeing defendant loading his gun,

the witness began to run. As she ran, defendant fired multiple shots, one of which entered the witness's back. She fell to the ground, got up, and continued to run. The witness ran to a house. Finding no one there, she ran to the next house.

The occupant of the second house testified that he had been sleeping when he heard shots being fired and a noise in his bathroom. Upon investigating, he saw a naked young woman, later identified as the witness, running around the corner of his house, and trying to get into his home through the sliding glass door. The witness told the occupant that someone had shot and raped her. The occupant called 911 and the police arrived three or four minutes later. The occupant told the police officers that he thought a bullet had come through his home during the shooting. When the officers investigated the perimeter of the house, they found bullet holes in the north side of the residence.

Defendant presented evidence tending to show that he and the witness engaged in consensual intercourse. Defendant testified that he gave the witness a ride on 30 September 1993, after she approached him while he was stopped at an intersection. Defendant stated that he believed the witness to be a prostitute because that intersection had a reputation for being an area for prostitution and because of the provocative look that the witness gave him when she approached his vehicle.

After getting into defendant's car, the witness began a conversation, during which she stated that she would "do everything for $25," and in the event that defendant did not have cash, she would accept crack cocaine as payment instead. Defendant testified that the witness began to give details of her activities with a previous "trick" that evening. The witness directed him to park at the end of a dead end road so that they could engage in sexual activity.

Defendant testified that the witness asked him if he wanted her to perform fellatio on him. Defendant states that he and the witness engaged in consensual vaginal intercourse. He denied that they ever had anal intercourse. After having intercourse, the witness ingested Valium and demanded $25. Medical records showed the presence of cocaine and Valium in the witness's blood on the night in question. Upon the witness's demand for payment, defendant told her that he did not have $25, nor any crack cocaine. The witness became upset and threatened defendant, telling him that she would not leave the car until he paid her. Because defendant knew that he did not have

any means to pay the witness and was concerned about being out too late, defendant began to tussle with the witness in an effort to get her out of the car. She would not budge. Finally, defendant retrieved his handgun from under the seat of his car in order to frighten her into getting out of the car. The witness reacted by grabbing defendant by the collar and dragging him toward the ditch on the side of the road. While standing on the edge of a ditch, defendant fired the gun into the air. Upon losing his balance, defendant continued to fire the gun. Defendant testified he accidentally fired into a house. He did not shoot directly at the witness; rather, he shot in the air to frighten her. Defendant testified that he got back into his vehicle, threw the gun onto the seat of his car and drove away.

The jury found defendant guilty of first degree rape, two counts of first degree sexual offense, discharging a firearm into occupied property, and assault with a deadly weapon with intent to kill inflicting serious injury. On 1 June 1995, Judge Anthony M. Brannon entered judgment and commitments sentencing defendant to three concurrent life terms, a three-year term to run concurrently, and a twenty-year term to run consecutively. Defendant appeals.

[1] On appeal, defendant first argues that the trial court erred in prohibiting him from conducting surveillance of the witness to establish evidence of a pattern of behavior related to defendant's evidence. We do not agree.

N.C. Gen. Stat. § 7A-450(b) (1995) provides:

Whenever a person . . . is determined to be an indigent person entitled to counsel, it is the responsibility of the State to provide him with counsel and the other necessary expenses of representation.

Further, N.C. Gen. Stat. § 7A-454 (1995) provides:

The court, in its discretion, may approve a fee for the service of an expert witness who testifies for an indigent person, and shall approve reimbursement for the necessary expenses of counsel. Fees and expenses accrued under this section shall be paid by the State.

Together, these two sections require that a private investigator be provided upon a showing by the defendant that there is a reasonable likelihood that it will materially assist the defendant in the preparation of his defense or that without such help more likely than not the

defendant will not receive a fair trial. *State v. Gardner*, 311 N.C. 489, 319 S.E.2d 591 (1984), *cert. denied*, 469 U.S. 1230, 84 L. Ed. 2d 369 (1985). Caution is to be exercised in the appointment of an investigator, and an investigator should be provided only upon a clear showing that specific evidence is reasonably available and necessary for a proper defense. *State v. Williams*, 304 N.C. 394, 284 S.E.2d 437 (1981), *cert. denied*, 456 U.S. 932, 72 L. Ed. 2d 450 (1982). "Mere hope or suspicion that favorable evidence is available is not enough" under the state or federal constitutions to require that a private investigator be provided to an indigent defendant. *State v. Holden*, 321 N.C. 125, 136, 362 S.E.2d 513, 522 (1987) (citing *State v. Tatum*, 291 N.C. 73, 229 S.E.2d 562 (1976)), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Finally, the issue of whether a private investigator should be appointed at state expense to assist an indigent defendant rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion. *Gardner*, 311 N.C. 489, 319 S.E.2d 591.

In the instant case, defendant made two *ex parte* motions for funds to hire or pay for a private investigator. In these motions, defendant indicated that the purpose of the investigator was to conduct surveillance of the witness to find evidence that she was a prostitute. The second motion noted that information had been obtained from various unnamed sources—one of which was a Durham Police Officer—which indicated that the witness was "a regular user of drugs, including cocaine," and "a prostitute who performed sexual acts in exchange for cocaine or money." Defendant alleged in both motions that this information would be admissible under Rule 412(b)(3) of the North Carolina Rules of Evidence. Further, defendant alleged that the information that was to be obtained in reference to the prosecuting witness was "crucial for the defense because the defendant will testify at the trial of this action that the sexual acts were consensual, that the prosecuting witness is a prostitute who agreed to perform various sexual acts in return for the payment of money or cocaine, and that the prosecuting witness only alleged that the sex acts were nonconsensual when the defendant informed the prosecuting witness that he did not have any money or cocaine." The trial court granted both of defendant's motions for funds for a private investigator; however, he prohibited defendant from using the investigator to conduct surveillance of the witness.

In analyzing the facts as presented to the trial court, we find no clear showing that the evidence which defendant sought in regard to

STATE v. FLETCHER

[125 N.C. App. 505 (1997)]

the witness being a prostitute was obtainable only through her surveillance. Significantly, it was only the surveillance of the witness that was prohibited by the trial court, not the obtaining of other evidence admissible under Rule 412(b)(3). Moreover, defendant's argument seems to ignore the fact that prostitutes may be victims of sexual offenses. Evidence of prostitution does not necessarily counter the allegations of the witness. Thus, while there are certainly many circumstances under which surveillance of witnesses would be appropriate, we cannot say that the trial court abused its discretion in prohibiting the surveillance under the facts of this case.

[2] We likewise reject defendant's argument that the surveillance prohibition amounted to a denial of equal protection of the law. The Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution guarantee fundamental fairness and equal protection under the law. This right encompasses proper representation of a defendant in the judicial arena. *See Tatum*, 291 N.C. 73, 229 S.E.2d 562. The trial court below authorized the retention and payment of a state-funded private investigator for the defendant, pursuant to §§ 7A-450(b) and 7A-454. We do not find the prohibition of the surveillance of the witness to impose an arbitrary barrier, nor a violation of defendant's right to equal protection of the law. Rather, as we stated earlier, we find no abuse of the trial court's discretion, under the facts of this case.

[3] Defendant next argues that a statement made by the prosecutor, referencing the fact that defendant had been represented by several attorneys, was unfairly prejudicial because it implied that no one wanted to represent defendant because he was guilty. We find no error.

In his cross-examination of defendant, the prosecutor stated: "And now, nearly two years later and several lawyers later you expect this jury . . . ." Defense counsel objected, and the trial court sustained the objection. Defense counsel asked for a curative instruction to the jury, and the trial court gave proper instructions. When defense counsel was asked if he had any further requests by the trial court, he answered "no."

When defense counsel objects, and the objection is sustained, and curative instructions are given to the jury, defendant has no grounds for exception on appeal. "Jurors are presumed to follow a trial judge's instructions." *State v. Taylor*, 340 N.C. 52, 64, 455 S.E.2d 859, 866 (1995). Assuming that the comment was on defendant's guilt,

"the court cured any error by its action in sustaining the objection and giving the curative instruction." *State v. Bowie*, 340 N.C. 199, 209, 456 S.E.2d 771, 776, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 435 (1995).

**[4]** Defendant next contends that the trial court erred in instructing the jury that the intent to shoot a person is transferrable to the offense of discharging a firearm into occupied property. We disagree.

North Carolina recognizes the doctrine of transferred intent, which provides that if a defendant intends to shoot a particular person—the intended victim—but actually shoots another person, the legal effect is the same as if the defendant had shot and hit the intended victim with that particular bullet. *State v. Abraham*, 338 N.C. 315, 332, 451 S.E.2d 131, 139 (1994) (quoting *State v. Wynn*, 278 N.C. 513, 519, 180 S.E.2d 135, 139 (1971)). In the case below, the trial court utilized the doctrine to transfer the intent to shoot a particular person to the offense of discharging a firearm into the occupied property of another. We find no North Carolina cases exploring the trial court's instruction that the intent to shoot a person is transferrable in order to satisfy the intent element of discharging a firearm into occupied property. However, we find guidance in a common sense analysis of other cases.

The North Carolina Supreme Court has defined the crime of discharging a firearm into occupied property:

> [A] person is guilty of [discharging a firearm into occupied property] if he intentionally, without legal justification or excuse, discharges a firearm into *an occupied building* with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons.

*State v. Williams*, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973). Reasonable grounds to believe that a building might be occupied can certainly be found where a defendant has shot into a residence during the evening hours, as homeowners are most often at home during these hours. Discharging a weapon into occupied property is a general intent crime. In fact, our Supreme Court, in *State v. Jones*, stated: "Discharging a firearm into a vehicle [or other occupied property] does not require that the State prove any specific intent but only that the defendant perform the act which is forbidden by statute. It is a general intent crime." 339 N.C. 114, 148, 451 S.E.2d 826, 844 (1994)

(citing *State v. Wheeler*, 321 N.C. 725, 365 S.E.2d 609 (1988)), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 873 (1995). Further, the offense of discharging a weapon into occupied property, like assault, is an offense against the person, and not against property. The Supreme Court stated in *State v. Williams*, "This statute [(N.C. Gen. Stat. § 14-34.1)] was enacted for the protection of occupants of the premises, vehicles, and other property described in the statute." 21 N.C. App. 525, 526, 204 S.E.2d 864, 865 (1974). As such, we uphold the trial court's utilizing the doctrine of transferred intent to satisfy the intent element of discharging a firearm into occupied property, where the evidence tends to show that defendant intended to shoot a person, but instead shot into an occupied residence. We find no error in the trial court's instruction.

[5] Defendant also contends the trial court committed plain error in instructing the jury that it should scrutinize defendant's testimony carefully based on his interest in the outcome of the case. We find no error.

At trial, if a defendant fails to properly object to a jury instruction, he may still seek redress upon appellate review. In that instance, the defendant must show that absent such an error in instruction, a different outcome would have been probable. *State v. Odom*, 307 N.C. 655, 661, 300 S.E.2d 375, 379 (1983).

In the instant case, the trial court gave the following pertinent instruction:

> You, the jury, should scrutinize his testimony carefully in the light of his interest in the outcome of the prosecution. But if after such scrutiny you, the jury, believe the defendant as a witness has told you the truth, you should then give his testimony the same weight you give to the testimony of any other credible witness.

Defendant failed to object to this instruction and now alleges plain error on appeal.

The instruction in the present case is strikingly similar to the instruction found in *State v. Dunn*, 20 N.C. App. 143, 200 S.E.2d 822 (1973), in which this Court noted:

> On his final assignment of error, defendant contends the court committed error by instructing the jury to scrutinize carefully the defendant's testimony but after considering the influence of defendant's interest in the result, if they found defendant to be

telling the truth, then to give his testimony the same weight as any truthful witness. This instruction has been approved many times and we find the assignment without merit.

*Id.* at 145-46, 200 S.E.2d at 824. Defendant's attempt to distinguish the instruction in the instant case from that of the one analyzed in *Dunn* fails. We find no error.

**[6]** Finally, defendant argues the trial court erred by sentencing him to fourteen (14) additional years based solely on one prior misdemeanor conviction. This argument is unpersuasive.

Defendant was sentenced under the Fair Sentencing Act, which vests the trial court with discretion in the sentencing of a defendant. Under the Fair Sentencing Act, the trial judge is permitted wide latitude "in arriving at the truth as to the existence of aggravating and mitigating factors." *State v. Ahearn,* 307 N.C. 584, 596, 300 S.E.2d 689, 697 (1983). The trial court must, however, "justify a sentence which deviates from a presumptive term to the extent that [it] must make findings in aggravation and mitigation properly supported by the evidence and in accordance with the [Fair Sentencing] Act." *Id.* at 596-97, 300 S.E.2d at 697. A trial judge is not required to justify the weight attached to any one factor. *Id.* at 597, 300 S.E.2d at 697. The trial court may properly make the determination that one factor in aggravation outweighs one or more than one factor in mitigation. *Id.* Absent a finding of abuse of discretion, an appellate court will not disturb the trial judge's weighing of aggravating and mitigating factors. *State v. Parker,* 315 N.C. 249, 258-59, 337 S.E.2d 497, 503 (1985).

In this case, the trial court found one mitigating factor—good character and reputation in the community—and one aggravating factor—a prior conviction for an offense punishable by more than sixty (60) days. As is permitted, the court found that after weighing the factors, the aggravating factor outweighed the mitigating factor. We find no abuse of discretion, and the sentence will not be disturbed on appeal.

In summary, we find the defendant had a fair trial, free from prejudicial error.

No error.

Judges JOHN and McGEE concur.