STATE OF NORTH CAROLINA v. DONNA MARIE SMALL, Defendant

No. COA09-222

(Filed 8 December 2009)

## 1. Discovery— victim's undisclosed statement to prosecutors—no new information

The trial court did not abuse its discretion by denying defendant's motion to dismiss or exclude a victim's statement to prosecutors where that statement was not disclosed to defendant. There was nothing significantly new or different in the undisclosed statement; the only difference from the other, disclosed information was that the victim could not remember speaking to officers on the night of the shooting.

## 2. Appeal and Error— preservation of issues—instructions— objection at trial

The issue of a transferred intent instruction was preserved for appellate review where the State contended that defense counsel had objected to a different instruction, but it was clear from the record that the trial court was aware that defendant had objected to the transferred intent instruction and considered the two issues separately.

## 3. Firearms and Other Weapons— discharge into occupied building

Although defendant contended that inclusion of a transferred intent instruction was error in a prosecution for assault and discharging a firearm into occupied property, the instructions accurately conveyed the elements of the offense and comported with the evidence. Defendant intentionally fired a shotgun at the victim, hitting both the victim and a house defendant knew to be occupied.

**4. Firearms and Other Weapons— discharge into occupied property—muzzle velocity**

The trial court did not err by failing to dismiss the charge of discharging a firearm into occupied property for insufficient evidence that the shotgun met the velocity requirements of N.C.G.S. § 14-34.1(a). There are two categories of weapons covered by the statute: firearms and other barreled weapons. The plain language of the statute, legislative intent, and precedent indicate that the minimum muzzle velocity requirement applies to "other barreled weapons" and not to firearms in general.

Appeal by defendant from judgments entered 9 July 2008 by Judge Vance B. Long in Davidson County Superior Court. Heard in the Court of Appeals 14 September 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Karen A. Blum, for the State.*

*Mercedes O. Chut for defendant-appellant.*

HUNTER, Robert C., Judge.

Donna Marie Small ("defendant") appeals from felony convictions for discharging a firearm into occupied property and assault with a deadly weapon inflicting serious injury. After careful review, we find no error.

### Background

The evidence at trial tended to show that on 1 September 2006, Arthur Lee Hunt, Jr. ("Hunt") and his girlfriend, Wanda Small ("Wanda"), decided to spend the night at the home of Dennis Russell ("Russell"). Hunt is defendant's ex-boyfriend, and Wanda is defendant's sister. Also present in the home were Russell's wife and three children.

On 2 September 2006 between 2:30 a.m. and 3:00 a.m., Russell was awakened by a ringing telephone, which he did not answer. At that time, Russell noticed a vehicle in front of the house, and upon investigation, he saw someone disturbing Hunt's motorcycle. He then saw the same person retrieve a knife and shotgun out of a nearby car. Russell proceeded to awaken Hunt and tell him that someone was "messing with his bike." Russell then went to get his gun and call 911 as Hunt exited the front door.

STATE v. SMALL

[201 N.C. App. 331 (2009)]

From inside the house, Russell heard a shotgun blast, and Hunt immediately reappeared, yelling that defendant shot him. Russell saw defendant standing at the front door holding the shotgun, yelling: "Send Snoop[1] back out here so I can finish what I came for." Russell testified that he held defendant at gunpoint until the police arrived and arrested her. At the Thomasville Police Department, defendant signed a written statement before Officer Jason Annas ("Officer Annas") in which she admitted to shooting Hunt.

It was later determined in the emergency room that Hunt had been shot in the arm, shattering the bone, an injury which required a hospital stay of over a week. After arresting defendant, officers observed one broken window and pellet holes in the siding of Russell's house.

Defendant was indicted on one count of discharging a firearm into occupied property and one count of assault with a deadly weapon inflicting serious injury. Prior to trial, defendant made a motion to dismiss all charges, alleging that the State failed to comply with North Carolina's discovery procedures by not disclosing statements made by Wanda and Hunt to members of the district attorney's office. The court denied defendant's motion, but ordered the State to proffer Hunt's testimony outside the presence of the jury to enable the court to determine whether a discovery violation had occurred. After considering the State's proffer and arguments of counsel, the court denied defendant's renewed motion to dismiss. Defendant then made a motion *in limine* to exclude Hunt's testimony, which was also denied.

On 9 July 2008, defendant was convicted by a jury of both charges. She was sentenced to two consecutive sentences of 25 to 39 months imprisonment.

## Analysis

### I.

[1] Defendant first argues that the trial court erred in denying her motion to dismiss and motion *in limine* on the grounds that the State failed to comply with N.C. Gen. Stat. § 15A-903(a)(1) (2007) by not disclosing to defendant Hunt's pre-trial statement to the prosecution. Specifically, defendant claims that Hunt told the prosecution that he did not remember giving a statement to police on the night of the

---

1. Snoop is a nickname for Arthur Hunt.

shooting, but the officer's report, which was disclosed to defendant, contained a statement made by Hunt to the officer.

The purpose of our discovery statutes is "to protect the defendant from unfair surprise." *State v. Tucker*, 329 N.C. 709, 716, 407 S.E.2d 805, 809-10 (1991). "Whether a party has complied with discovery and what sanctions, if any, should be imposed are questions addressed to the sound discretion of the trial court." *Id.* at 716, 407 S.E.2d at 810. "[The] discretionary rulings of the trial court will not be disturbed on the issue of failure to make discovery absent a showing of bad faith by the state in its noncompliance with the discovery requirements." *State v. McClintick*, 315 N.C. 649, 662, 340 S.E.2d 41, 49 (1986). "[O]nce a party, or the State has provided discovery there is a continuing duty to provide discovery and disclosure." *State v. Blankenship*, 178 N.C. App. 351, 354, 631 S.E.2d 208, 210 (2006).

N.C. Gen. Stat. § 15A-903(a)(1) provides that, upon defendant's motion, the court must order the State to make available to the defense, *inter alia*, all witness statements and investigating officers' notes. In addition, any oral statements made by a witness to a prosecuting attorney outside the presence of a law enforcement officer must be provided in writing or in recorded form if there is "significantly new or different information in the oral statement from a prior statement made by the witness." *Id.*

During the trial court's inquiry into the alleged discovery violation, the State presented Officer Annas's report, which provided in part that "Mr. Hunt was coherent and also stated that Ms. Donna Marie Small shot him." The State provided this report to defendant during discovery. Upon *voir dire* examination, Hunt testified as follows:

Q. And could you see in what position your bike was in?

A. It was upright, and she was standing beside of it.

Q. And by "she," who do you mean, sir?

A. Donna Small.

Q. And what happened after you saw Ms. Small?

A. She said, "Come here, I want to talk to you."

Q. Okay. And what did you do after that?

. . . .

A. I went in and put my shoes on, and as I was coming back out the door, I shut the door 'cause I didn't want nobody to hear us arguing, and when I shut the door—when I turned around, I seen a barrel pointing at me, and I didn't say anything.

Q. After Ms. Small pointed the gun at you, what happened next?

A. Well, as I was closing the door, I seen a barrel pointing at me. So I didn't say anything or do nothing, I just took a jump, and pow.

Q. Took a what? Took a jump?

A. Took a leap. And when I did, my arm goes out like this, and pow, blew it right behind me.

Q. Where did you leap to, sir?

A. I jumped—tried to jump between the brick column. I didn't make it, so I stood back up and I ran in the house and told my cousin to call the ambulance, that Donna Small shot me.

Hunt then testified regarding a pre-trial interview between himself and prosecutor Wendy Terry ("Terry"), which defendant claimed was never provided to her during discovery:

Q. And you said you have no remembrance of talking to any officer?

A. I was shocked. I don't remember what got there first, the ambulance or a police officer.

Q. Do you remember ever talking to a police officer?

A. No. All I remember is the ambulance.

Based on the foregoing, the trial court made the following findings of fact and conclusions of law:

[T]he Court finds that the alleged victim in this matter issued a statement to the initial investigating officer, which is contained in an incident investigation report with an addendum or attachment entitled, "Reporting Officer Narrative," which reads in part as follows: "Mr. Hunt was coherent and also stated Ms. Donna Marie Small shot him."

. . . .

The Court further finds that this statement made to the officer constitutes a prior statement under N.C.G.S. § 15A-903(a)(1), and

that while the alleged victim's proffer of testimony does offer contextual details not included in the prior statement, *that the testimony does not constitute a significantly new or different statement from the prior statement given to the officers.*

. . . .

The Court finds and concludes that this statement was disclosed to the defendant in discovery. The Court finds that, further, the defendant has provided a Mirandized statement, according to the discovery to the officers, wherein she admits to shooting the alleged victim.

(Emphasis Added.)

Ultimately the trial court concluded that the pre-trial statement made to Terry did not offer any significantly new or different information from what had already been provided in prior discovery disclosures and therefore no discovery violation had occurred.

Hunt testified during *voir dire* that defendant shot him, which is precisely the same information conveyed to Officer Annas and included in the officer's report, which was disclosed to defendant. Further, the assertion that defendant shot Hunt was contained in other witness statements and that of defendant herself. Nothing in the record indicates that Hunt at any point made a statement to prosecutors contradicting or in any way altering his statement that he was shot by defendant. The only divergence in Hunt's oral pre-trial statement to the State was that he did not remember speaking with officers on the night of the shooting. However, Hunt's account of the actual incident remained consistent.

In sum, Hunt's statement that he could not remember giving a statement to the police does not constitute any unfair surprise to defendant; rather, Hunt's proffered testimony comports with his earlier statement that defendant shot him. Therefore, although Hunt did make a subsequent statement to prosecutors, since it did not contain significantly new or different information from his prior statement, the State was under no duty to disclose the second statement. Accordingly, we find no abuse of discretion in the trial court's denial of defendant's motion to dismiss the charges or denial of her motion *in limine.*

## II.

Defendant next contends that the trial court erred by providing a jury instruction on transferred intent. The State opposes considera-

tion of this issue on the ground that defendant failed to object to the instruction at trial. "Where a defendant fails to make a proper objection at trial, he waives the issue on appeal, absent a finding of plain error." *State v. Ferebee*, 177 N.C. App. 785, 789, 630 S.E.2d 460, 463 (2006) (citations omitted).

## A. Preservation of Issue

**[2]** The discussion of transferred intent first arose during defendant's motion to dismiss the charge of discharging a firearm into occupied property. In arguing that the State had presented sufficient evidence of intent as to that charge, the prosecutor cited *State v. Fletcher*, 125 N.C. App. 505, 481 S.E.2d 418, *disc. review denied*, 346 N.C. 285, 487 S.E.2d 560, *cert. denied*, 522 U.S. 957, 118 S. Ct. 383, 139 L. Ed. 2d 299 (1997), and explained that

> [i]n that case, the court upheld the trial court's use of the doctrine of transferred intent to satisfy the intent element of the crime of discharging a firearm into an occupied residence where the evidence tended to show the defendant intended to shoot a person, but instead shot into an occupied residence.

The trial court then ruled that "defendant's motion to dismiss the charge of firing into an occupied dwelling at the close of all of the evidence is denied on the basis of 125 N.C. App. 505." At that point, the judge indicated his intent to include a transferred intent charge by stating: "I'm not sure how transferred intent is crafted by that trial judge, but they clearly upheld it." When asked if he had anything further, defense counsel stated: "Please Your Honor to each of the court's findings of fact, conclusions of law and rulings, the defendant respectfully excepts, respectfully objects and excepts."

After recalling the jury for defendant to rest, the court proposed delivery of a jury charge that included incorporation of the transferred intent charge within the substantive charge of discharging a firearm into occupied property. After additional discussion regarding the submission of lesser-included offenses and proposed instructions by defense counsel, the court began addressing defendant's objections to the State's second proposed instruction, an expansion of the substantive charge of discharging a firearm into occupied property to include a definition of willful and wanton. Subsequently, the court stated:

> I will then, over the defendant's objections, include the special instruction requested by the [State] as to transferred intent to

**STATE v. SMALL**

[201 N.C. App. 331 (2009)]

read as follows: If you find that the defendant, Donna Marie Small, intended to shoot Arthur Lee Hunt, Junior, and in doing so discharged a weapon into 9 Park Street, Thomasville, North Carolina, then you may infer that Donna Marie Small willfully, wantonly and intentionally shot into 9 Park Street, Thomasville, North Carolina.

The State contends that the trial court mis-spoke in stating that defense counsel had objected to the transferred intent instruction, when in actuality, he had objected to the definition of willful and wanton. However, it is significant that immediately after ruling on the transferred intent instruction, the trial court stated, "I don't think, guys, I don't know that we need—could you guys expand a little bit more why you think we need to define wanton for the jury?" Shortly thereafter, the court "sustain[ed] the defendant's objection to including an expanded definition in the jury instructions themselves." Thus, it is clear from the record that the trial court considered these two issues separately and was cognizant from all previous discussions that defendant objected to the transferred intent instruction and the instruction that defined willful and wanton.

A complete review of the record indicates that defendant excepted to both proposed instructions. This showing, in combination with the trial court's clear perception that defendant specifically objected to the transferred intent portion of the charge, is sufficient for this Court to review defendant's assignment of error.

## B. Jury Instruction—Transferred Intent

[3] When evaluating a challenge to a jury instruction, this Court must determine whether the trial court "instruct[ed] the jury on the law arising on the evidence." *State v. Bogle,* 324 N.C. 190, 195, 376 S.E.2d 745, 748 (1989). "Failure to instruct upon all substantive or material features of the crime charged is error." *Id.; accord State v. Lanier,* 165 N.C. App. 337, 354, 598 S.E.2d 596, 607 (2004) (stating that "[f]ailure to instruct on each element of [the] crime is prejudicial error requiring a new trial"). Therefore, we must determine whether incorporation of the transferred intent instruction properly conveyed to the jury the elements of discharging a weapon into occupied property.

According to our Supreme Court, discharging a firearm into occupied property is defined as "intentionally, without legal justification or excuse, discharg[ing] a firearm into an occupied building with

knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons." *State v. Williams*, 284 N.C. 67, 73, 199 S.E.2d 409, 412 (1973) (emphasis omitted); N.C. Gen. Stat. § 14-34.1 (2007). Defendant contends that inclusion of the transferred intent instruction inaccurately informed the jury of these elements.

Defendant cites *State v. James*, 342 N.C. 589, 466 S.E.2d 710 (1996), for the proposition that the statute requires proof that defendant knew the structure into which she shot was occupied. When instructing on the elements of this offense, the trial court instructed that the third element the State must prove was "that Donna Marie Small knew that 9 Park Street, Thomasville, North Carolina was occupied by one or more persons." In the final mandate of that instruction the trial court stated:

> If you find from the evidence beyond a reasonable doubt that on or about September 2, 2006, Donna Marie Small willfully or wantonly and intentionally discharged a firearm into 9 Park Street, Thomasville, North Carolina, while it was occupied, and that the defendant knew that it might be occupied, it would be your duty to return a verdict of guilty. If you do not so find or if you have a reasonable doubt as to one or more of these things, it would be your duty to return a verdict of not guilty.

It is clear from the record that the jury was properly instructed that the State was required to prove knowledge that the home was occupied before finding defendant guilty of this charge.

Defendant further argues that the doctrine of transferred intent may not be applied when a defendant is charged with a different crime than he or she apparently intended to commit, or if the crime charged is not a specific intent crime. Defendant cites *State v. Jordan*, 140 N.C. App. 594, 537 S.E.2d 843 (2000), for this proposition; however, defendant's reliance on *Jordan* is misplaced.

In *Jordan*, this Court reversed the defendant's conviction due to erroneous jury instructions because the trial court submitted "a logical impossibility for the jury's consideration," and also instructed in "an inherently inconsistent manner." *Id.* at 596, 537 S.E.2d at 845. When instructing on second-degree murder, the trial judge described deliberation as a required element when, in fact, deliberation was not required. *Id.* Thus, this Court's decision in *Jordan* was not a prohibition against utilizing the doctrine of transferred intent to satisfy the

intent element of a different crime or a restriction of its use to only specific intent crimes; rather, *Jordan* narrowly held that the instructions in that case were misleading.

In contrast, this Court has expressly authorized the use of the transferred intent doctrine "to satisfy the intent element of discharging a firearm into occupied property, where the evidence tends to show that defendant intended to shoot a person, but instead shot into an occupied residence." *Fletcher*, 125 N.C. App. at 513, 481 S.E.2d at 423. In *Fletcher*, the evidence showed that the defendant fired shots at the victim's back as she attempted to flee. *Id.* at 508, 481 S.E.2d at 420. The victim sought refuge at a nearby residence. *Id.* When police arrived, the occupant of the residence identified several areas where bullets had penetrated the house. *Id.* This Court found no error in the trial court's utilization of the transferred intent instruction to transfer the intent to shoot a particular person to the offense of discharging a firearm into the occupied property of another. *Id.* at 513, S.E.2d at 423. Rationale for this treatment is based on the fact that N.C. Gen. Stat. § 14-34.1, which prohibits discharging a weapon into occupied property, was "enacted for the protection of occupants of the premises" and is therefore "an offense against the person, and not against property." *Id.*

In the case *sub judice*, the State presented evidence that defendant intentionally fired a weapon toward Hunt and that some projectiles penetrated the exterior of Russell's home. Further, evidence was introduced showing that defendant knew persons other than Hunt were present inside the home. Nothing in the trial court's instructions to the jury negated the requirement that the jury find: (1) an intentional discharge of the firearm; (2) into an occupied building; and (3) defendant had knowledge, or reasonable grounds for believing that the building was occupied at the time of the discharge.

Thus, the trial court's substantive instructions on discharging a weapon into occupied property accurately conveyed the elements of the offense to the jury and comported with the evidence presented. The trial court, therefore, did not err in incorporating the transferred intent doctrine into the instruction for this offense.

III.

[4] Finally, defendant argues that the trial court erred in failing to dismiss the charge of discharging a firearm into occupied property due to insufficiency of the evidence. Specifically, defendant argues that the State failed to present evidence that the firearm discharged

by defendant met the requisite velocity specifications set forth in N.C. Gen. Stat. § 14-34.1(a). This argument is without merit.

A motion to dismiss due to insufficiency of the evidence is properly denied if the State has presented substantial evidence of each essential element of the offense charged and that the defendant is the perpetrator. *State v. Fritsch*, 351 N.C. 373, 378, 526 S.E.2d 451, 455, *cert. denied*, 531 U.S. 890, 121 S. Ct. 213, 148 L. Ed. 150 (2000). Substantial evidence is that which a reasonable fact finder might find sufficient to support a conclusion. *State v. McLaurin*, 320 N.C. 143, 146, 357 S.E.2d 636, 638 (1987). The court "must view the evidence in the light most favorable to the State, giving the State the benefit of all reasonable inferences." *Fritsch*, 351 N.C. at 378-79, 526 S.E.2d at 455.

The applicable statute provides that:

> Any person who willfully or wantonly discharges or attempts to discharge *any firearm or barreled weapon capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second* into any building, structure, vehicle, aircraft, watercraft, or other conveyance, device, equipment, erection, or enclosure while it is occupied is guilty of a Class E felony.

N.C. Gen. Stat. § 14-34.1(a) (emphasis added). A firearm is defined as "[a] handgun, shotgun, or rifle which expels a projectile by action of an explosion." N.C. Gen. Stat. § 14-409.39(2) (2007).

Of particular relevance is the legislature's use of the word "or" in N.C. Gen. Stat. § 14-34.1(a). This Court has held that " '[w]here a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (e.g. 'or'), the application of the statute is not limited to cases falling within both classes, but will apply to cases falling within either of them.' " *State v. Conway*, —— N.C. App. ——, ——, 669 S.E.2d 40, 43 (2008) (quoting *Grassy Creek Neighborhood Alliance, Inc. v. City of Winston-Salem*, 142 N.C. App. 290, 296, 542 S.E.2d 296, 300 (2001)). There are two categories of weapons covered by this statute; firearms and other barreled weapons. The question then becomes whether the descriptive phrase "capable of discharging shot, bullets, pellets, or other missiles at a muzzle velocity of at least 600 feet per second" refers only to "barreled weapons" or also applies to "any firearm." Although this is a novel issue, the plain language of the statute, legislative intent, and previous treatment by North Carolina Courts indicate that the mini-

mum muzzle velocity requirement applies only to "barreled weapons" and not to firearms in general.

"The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute. To determine this intent, the courts should consider the language of the statute, the spirit of the act, and what the act seeks to accomplish." *Tellado v. Ti-Caro Corp.*, 119 N.C. App. 529, 533, 459 S.E.2d 27, 30 (1995) (citation omitted).

The title of the statute at issue is "Discharging certain barreled weapons or a firearm into occupied property." N.C. Gen. Stat. § 14-34.1. The most reasonable interpretation is that all firearms are implicated in the statute, but only certain barreled weapons are included—those with a muzzle velocity of at least 600 feet per second. Also, the intent of this statute is to protect occupants of the building. *Williams*, 284 N.C. at 72, 199 S.E.2d at 412. Thus, the most logical interpretation is that the General Assembly was primarily concerned with the use of traditional firearms to shoot into occupied property but further recognized the potential for individuals to use non-traditional barreled weapons for this same purpose. Therefore, the legislature included the traditional firearm in the statute, but further included other barreled weapons that have a propensity to penetrate a structure and injure occupants.

Additionally, a person is guilty of this felony if "he intentionally, without legal justification or excuse, discharges a firearm into an occupied building with knowledge that the building is then occupied by one or more persons or when he has reasonable grounds to believe that the building might be occupied by one or more persons." *Williams*, 284 N.C. at 73, 199 S.E.2d at 412 (emphasis omitted). The jury was properly instructed as to these elements. Defendant fails to cite any cases, and we have found none, requiring presentation of evidence of muzzle velocity as part of the State's *prima facie* case for this charge.

In sum, because there was substantial evidence to satisfy each element of the crime charged, and that defendant was the perpetrator, we conclude that the trial court did not err in denying defendant's motion to dismiss.

## Conclusion

For the foregoing reasons, we hold that the trial court did not abuse its discretion when it determined that the State did not violate

the discovery statutes; the trial court did not err in incorporating transferred intent into the jury instructions; and the trial court did not err in denying defendant's motion to dismiss the charge of discharging a firearm into occupied property.

No error.

Chief Judge MARTIN and Judge BRYANT concur.