IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-71

No. COA20-177

Filed 16 March 2021

Pasquotank County, No. 17 CRS 51817, 51821

STATE OF NORTH CAROLINA

v.

RODNEY STOKLEY, JR.

Appeal by defendant from judgments entered 30 July 2019 by Judge Wayland J. Sermons, Jr. in Pasquotank County Superior Court. Heard in the Court of Appeals 12 January 2021.

*Attorney General Joshua H. Stein, by Assistant Attorney General Rajeev K. Premakumar, for the State.*

*Richard J. Constanza for defendant-appellant.*

TYSON, Judge.

¶ 1      Rodney Stokley, Jr. ("Defendant") appeals from judgments entered after a jury returned verdicts finding him guilty of assault with a deadly weapon inflicting serious injury, robbery with a dangerous weapon, and second-degree kidnapping. Defendant seeks this Court's review of the ruling on his motion to dismiss the charge of second-degree kidnapping, and to award a new trial for unpreserved plain error in the jury instructions. We find no error.

## I.   Background

Clinton Saunders ("Saunders") was playing video games in his dark bedroom and was wearing noise-canceling headphones on 11 December 2017. Earlier that evening, Damon Williams ("Williams"), Rasheem Williams ("Rasheem") and Rodney Stokley ("Defendant") planned to rob Saunders' roommate, Jordan Baeza ("Baeza"). As Saunders played video games, a tall, unidentified man, later identified as Defendant, came into Saunders' room, brandished a gun, and motioned for him to move. Saunders walked to the living room, "assuming that is where I was supposed to go" with his hands up. Saunders testified, "[h]e told me to get on the ground, so I just laid face down."

Saunders was not tied up or placed in restraints. He recalled two men were inside the house with him at the time. One man was already in the living room, and the other man was behind him, holding a gun. Nothing was taken or removed from Saunders at the time he was taken from his bedroom into the living room or immediately thereafter.

Soon after Saunders had laid onto the floor, Baeza entered the house from the garage and said, "D.J. what the hell?" Defendant was hovering over Saunders, pointing the gun at him, and then pointed the gun at Baeza. Defendant looked at Baeza and said, "What's up, buddy?" and told Baeza to get onto the floor. Saunders

testified he heard one of the perpetrators say, "Where is it, where is it[?]" and heard footsteps walking around the house.

¶ 5        Saunders testified he heard Baeza tell the men that Saunders had nothing to do with this and to not hurt him. The perpetrators responded they would not harm Saunders. Initially, Baeza got onto the kitchen floor, but then attempted to escape. As he fled, Defendant shot Baeza in the back.

¶ 6        Saunders heard the gunshot, felt the heat from the discharge, and could "hear blood coming out." Baeza testified Defendant spoke to him after he had shot him. While this was occurring, Baeza told the robbers where he kept his money. Williams began "ransacking" Baeza's room and took his wallet. Someone rifled through Saunders' pockets and took his cellphone. The intruders left the residence. Saunders realized Baeza had been shot and drove him to the hospital, where Baeza underwent several surgeries.

¶ 7        Police officers took initial statements from Baeza and Saunders at the hospital. In a later interview, Baeza told police it was Defendant, who had shot him. Baeza came to this conclusion after looking at Defendant's Facebook social media page. Baeza testified he was "One-hundred percent" sure that Defendant had shot him.

¶ 8        Defendant was arrested on 2 January 2018 and charged with assault with a deadly weapon with intent to kill inflicting serious injury, robbery with a dangerous weapon, first-degree kidnapping, and second-degree kidnapping.

¶ 9        The Pasquotank County Grand Jury returned true bills of indictment charging Defendant with the offenses listed above on 26 February 2018. The second-degree kidnapping indictment alleged Defendant "unlawfully, willfully, and feloniously did kidnap Clinton Saunders . . . by unlawfully confining him without his consent and for the purpose of facilitating the commission of a felony, Robbery with a Dangerous Weapon."

¶ 10       Williams entered into a plea bargain with the State. He pled guilty to assault with a deadly weapon with intent to kill inflicting serious injury and was placed on supervised probation for 48 months. One condition of this probation required him to testify for the State at Defendant's trial.

¶ 11       Williams testified his nickname is D.J. and that he had invited Rasheem to join him to "get some money" from Baeza. Rasheem then invited Defendant to join them. Williams knew both of these men prior to this event. He drove Rasheem and Defendant to Baeza's home the night of the robbery. Williams testified he dropped Rasheem and Defendant off prior to entering Baeza's driveway, "[b]ecause we were trying to find a way in" the house to "rob him."

¶ 12       Defense counsel argued both kidnapping charges should be dismissed, contending the victims were not restrained to a degree over that inherent during the underlying robbery. The trial court dismissed the charge of first-degree kidnapping

related to Baeza but the trial court denied dismissing the second-degree kidnapping charge related to Saunders.

¶ 13        Defendant testified in his own defense. He denied having any involvement in the kidnapping, robbery and shooting. He asserted he was attending a memorial service for a deceased family member when the robbery and shooting occurred.

¶ 14        The trial court instructed the jury on second-degree kidnapping. The trial court did not instruct the jury on the confinement theory of kidnapping, as was alleged in the indictment. Defense counsel failed to raise an objection to this omission.

¶ 15        The jury found Defendant guilty of second-degree kidnapping, assault with a deadly weapon inflicting serious injury, and robbery with a dangerous weapon. Defense counsel moved to arrest judgment on the conviction for second-degree kidnapping of Saunders, and renewed the arguments previously made. The trial court denied the motion and proceeded to sentencing.

¶ 16        Defendant was sentenced to 29 to 47 months of imprisonment for assault with a deadly weapon inflicting serious injury and 73 to 100 months of imprisonment to run consecutively to the assault sentence for robbery with a dangerous weapon. For second-degree kidnapping, Defendant was sentenced to 29 to 47 months imprisonment, which was suspended, Defendant was placed on supervised probation for 36 months, to commence after he completed the terms of active imprisonment.

Defendant entered notice of appeal in open court.

## II.    Jurisdiction

This Court possesses jurisdiction from an appeal from a final judgment entered in a criminal case following a jury's return of guilty verdicts. N.C. Gen. Stat. § 7A-27(b) (2019).

## III.    Issues

Defendant argues the trial court erred in denying his motion to dismiss the charge of second-degree kidnapping, after the State failed to show Saunders was subjected to restraint other than what was inherent in the underlying robbery. Defendant also argues, without objection and preservation, the trial court committed plain error when instructing the jury on second-degree kidnapping. He asserts the instructions allowed the jury to return a conviction based on theories other than what was alleged in the indictment.

## IV.    Second-Degree Kidnapping

### A. Standard of Review

"This Court reviews the trial court's denial of a motion to dismiss *de novo.*" *State v. Smith*, 186 N.C. App. 57, 62, 650 S.E.2d 29, 33 (2007). In evaluating the sufficiency of the evidence, the reviewing court examines the evidence in the light most favorable to the State, giving the State all reasonable inferences. *State v. Fritsch*, 351 N.C. 373, 378-79, 526 S.E.2d 451, 455 (2000). This Court must determine

whether substantial evidence supports each element of the offense and that the defendant committed the offense. *State v. Jones*, 110 N.C. App. 169, 177, 429 S.E.2d 597, 602 (1993), *disc. review denied*, 336 N.C. 612, 447 S.E.2d 407 (1994). Substantial evidence is defined as evidence a reasonable mind might accept as adequate to form a conclusion. *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).

## B. Analysis

Defendant argues the conviction for second-degree kidnapping should be reversed because none of the actions supporting that offense were separate and apart from the accompanying robbery. Defendant asserts his actions amounted to a mere technical asportation of Saunders, who was not exposed to any greater danger than what occurred during the underlying robbery.

The State acknowledges, "[T]his is a very tangled area of the law. The Courts are all over the place."

> [T]here is consistency in the Courts' opinions where the evidence tended to show that a victim was bound and physically harmed by the robbers during the robbery. Clearly that type of restraint creates the kind of danger and abuse the kidnapping statute was designed to prevent. The case law does not provide a bright line rule for situations where a victim is merely ordered to move to another location while the robbery is taking place, but is not bound or physically harmed.

*State v. Payton*, 198 N.C. App. 320, 327-28, 679 S.E.2d 502, 506-07 (2009) (internal citations and quotation marks omitted).

¶ 22     Kidnapping in North Carolina is statutorily defined as:

> (a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> (1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
>
> (3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or
>
>  . . .
>
> (b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree and is punishable as a Class C felony. If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree and is punishable as a Class E felony.

N.C. Gen. Stat. § 14-39(a)-(b) (2019).

### 1.  *State v. Fulcher*

¶ 23     Our Supreme Court announced the rule concerning prosecutions for kidnapping and other offenses that involve the victim being restrained to some degree

in *State v. Fulcher*:

> It is self-evident that certain felonies (*e.g.*, forcible rape and armed robbery) cannot be committed without some restraint of the victim. G. S. 14-39 was not intended by the Legislature to make a restraint, which is an inherent, inevitable feature of such other felony, also kidnapping so as to permit the conviction and punishment of the defendant for both crimes. To hold otherwise would violate the constitutional prohibition against double jeopardy. . . . [W]e construe the word "restrain" . . . to connote a restraint separate and apart from that which is inherent in the commission of the other felony.

*State v. Fulcher*, 294 N.C. 503, 523, 243 S.E.2d 338, 351 (1978) (Lake, Sr. J).

¶ 24      "Restraint or removal is inherently an element of some felonies, such as armed robbery." *State v. Raynor*, 128 N.C. App. 244, 250, 495 S.E.2d 176, 180 (1998). In cases involving armed robbery, "the restraint, confinement or removal required of the crime of kidnapping, has to be something more than that restraint inherently necessary for the commission of [armed robbery]." *Id*. Consistent with the holding in *Fulcher*, our Supreme Court later added: "To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy." *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981).

### 2.  *State v. Boyce*

¶ 25      The facts before us are similar to those in *State v. Boyce*, 361 N.C. 670, 651 S.E.2d 879 (2007). In *Boyce*, the defendant forced his way into the victim's house,

chased her through her home, and pulled her back into the house by her shirt as she tried to escape. The defendant threatened the victim at gunpoint and only left after she gave him a check for two hundred dollars. Our Supreme Court reiterated, "[w]hen . . . the kidnapping offense is a whole separate transaction, completed before the onset of the accompanying felony, conviction for both crimes is proper." *Id.* at 673, 651 S.E.2d at 881. Because the defendant prevented her escape, "[t]his restraint and removal was a distinct criminal transaction that facilitated the accompanying felony offense and was sufficient to constitute the separate crime of kidnapping under North Carolina law." *Id.* at 674, 651 S.E.2d at 882.

### 3. *State v. Stokes*

¶ 26        Our Supreme Court further explored double jeopardy issues in the context of a kidnapping and armed robbery prosecution in *State v. Stokes*, 367 N.C. 474, 756 S.E.2d 32 (2014). The Court noted:

> When we consider whether kidnapping and armed robbery charges may be sustained simultaneously, we look to whether the victim was *exposed to greater danger* than that inherent in the commission of the underlying felony or whether the victim was subjected to the kind of danger and abuse the kidnapping statute was designed to prevent.

*Id.* at 481, 756 S.E.2d at 37 (emphasis supplied) (citations and quotation marks omitted).

¶ 27        Here, Saunders was restrained and removed at gunpoint from one place to

another prior to the shooting and robbery of Baeza. His removal and restraint occurred to further the perpetrators' goal of keeping Saunders and eventually Baeza in one location while they searched for money. Defendant continued to point a gun at Saunders and Baeza until he had shot Baeza and the robbers had finished ransacking the home. After the perpetrators searched the home, they stole Saunders' cellphone and Baeza's wallet, and left Saunders to care for the wounded Baeza. Saunders' asportation from one room to another room in his home occurred against his will at gunpoint, and the perpetrators did not take anything from Saunders at that time.

### 4. *State v. Payton*

¶ 28    In *Payton*, the victims were subjected to a home-invasion burglary and armed robbery. 198 N.C. App. at 320, 679 S.E.2d at 502. One victim noticed her jewelry had be disturbed. *Id.* at 321, 679 S.E.2d at 503. The victims exited the bathroom and discovered three perpetrators walking toward them, and one was holding the victim's kaleidoscope. *Id.* The victims were ordered into a bathroom, and immediately asked where money was kept. *Id.* The victims told the perpetrators they had money in the women's purses downstairs. *Id.* Two robbers went to find their purses, while the third remained outside the bathroom door. *Id.* This Court reversed the defendant's kidnapping convictions, finding the restraint and removal of the victims was "an inherent part of the robbery and did not expose the victims to a greater danger than

the robbery itself." *Id.* at 328, 679 S.E.2d at 507.

¶ 29 Unlike the victims in *Payton*, Saunders was not immediately robbed when he was restrained and removed from one room to another at gunpoint. While Saunders was on the floor, Defendant continued to hold him at gunpoint, shot Baeza, and then rifled through Saunders' pockets and robbed him of his cellphone. The gunshot was so close, Saunders testified he could feel the heat from the discharge and hear Baeza's blood trickling. Saunders' asportation had already occurred, he was confined, restrained, and his movements were restricted prior to and in a clear break apart from the armed robbery. The removal was distinct from his confinement in the living room, and Saunders was exposed to "greater danger" by the shooting of Baeza which took place prior to the armed robbery of Saunders' cellphone and Baeza's wallet. *Stokes*, 367 N.C. at 481, 756 S.E.2d at 37.

## V.    Kidnapping: Reversed

¶ 30 "To permit separate and additional punishment where there has been only a technical asportation, inherent in the other offense perpetrated, would violate a defendant's constitutional protection against double jeopardy." *State v. Irwin*, 304 N.C. 93, 103, 282 S.E.2d 439, 446 (1981).

¶ 31 In *Irwin*, the defendant was convicted of first-degree kidnapping after the State's evidence supported a finding an accomplice forced one victim at knifepoint to walk from her position near the cash register to the back of the store. *Id.* During this

time, shots were fired at a second victim near the front of the store. The second victim died as a result of his injuries. *Id.* at 97, 282 S.E.2d at 443. The first victim was not touched or further restrained. *Id.* at 103, 282 S.E.2d at 446. Our Supreme Court held the "movement occurred in the main room of the store," and the first victim's "removal to the back of the store was an inherent and integral part of the attempted armed robbery." *Id.* "To accomplish defendant's objective of obtaining drugs it was necessary that [the victim] go to the back of the store to the prescription counter and open the safe." *Id.* Our Supreme Court held the victim's "removal was a mere technical asportation and insufficient to support conviction for a separate kidnapping offense." *Id.*

¶ 32        The movement of the victim in *Irwin* was essential to the robbery because the victim was required to open the safe. *Id.* Unlike the case before us, the movement of Saunders was not inherent or essential to complete the robbery.

¶ 33        In *State v. Ripley*, the defendant and accomplices forced a motel clerk to return to the check-in counter while they, at gunpoint, added victims entering the motel by forcing them to lie upon the floor for the duration of the robbery. *State v. Ripley*, 360 N.C. 333, 334-35, 626 S.E.2d 289, 290-91 (2006). Our Supreme Court held "defendant's actions constituted only a mere technical asportation of the victims which was an inherent part of the commission of robbery with a dangerous weapon." *Id.* at 341, 626 S.E.2d at 294 (internal quotations omitted).

¶ 34        The facts in *Ripley* differ from the case before us. The victims in *Ripley*, were held at gunpoint in one room while the perpetrators attempted their robbery. *Id.* In this case, Saunders was alone in his dark bedroom and consumed in playing games with headphones, and Defendant forced him to move through the home into the living room at gunpoint. Saunders was further held at gunpoint while Defendant inquired about the money, shot Baeza, searched the house, and robbed both victims.

¶ 35        In *Ripley,* our Supreme Court recognized a victim exposed to a greater danger may support a separate kidnapping conviction, but that determination was "unnecessary" to its conclusion. *Id.* In contrast, Saunders was exposed to a greater danger by being in close proximity when Baeza was shot.

¶ 36        The trial court correctly denied Defendant's motion to dismiss the second-degree kidnapping charge. We find no error in the Defendant's conviction for second-degree kidnapping in addition to the conviction for robbery with a dangerous weapon.

## VI.    Plain Error

## A. Standard of Review

¶ 37        Defense counsel failed to raise an objection to the omission of a jury instruction on "confinement." Because Defendant did not object to the jury instructions, this Court reviews unpreserved instructional errors using the plain error standard of review. *State v. Lawrence*, 365 N.C. 506, 723 S.E.2d 326 (2012). Establishing plain error requires proof that the error was fundamental and had a

probable impact on the jury's guilty verdict. *State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). For plain error to be found, it must be probable, not just possible, that absent the instructional error, the jury would have returned a different verdict. *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334.

## B. Analysis

### *1. Disjunctive Factors*

¶ 38 The second-degree kidnapping indictment alleged Defendant kidnapped Saunders by "unlawfully confining him" for the purpose of committing robbery with a dangerous weapon. The trial court instructed the jury that the Defendant would be guilty of second-degree kidnapping if they concluded:

> First, the defendant unlawfully restrained the person. That is, restricted his freedom of movement or removed a person from one place to another.
>
> Second, that the person did not consent to the restraint or removal. Consent induced by fraud or fear is not consent.
>
> Third, that the defendant removed or restrained that person for the purpose of facilitating his commission of the felony or robbery with a dangerous weapon.
>
> Fourth, that this restraint or removal was a separate and complete act, independent of and apart from the robbery with a dangerous weapon.

¶ 39 The first element of kidnapping requires the State to prove Defendant "confine[d], restrain[ed], or remove[d]" the victim. N.C. Gen. Stat. § 14-39(a). These

are discrete legal terms, having different meanings, and are stated disjunctively. "This Court has held that where a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (e.g. 'or'), the application of the statute is not limited to cases falling within both classes, but will apply to cases falling within either of them." *State v. Small*, 201 N.C. App. 331, 341, 689 S.E.2d 444, 450 (2009) (alteration, citations and internal quotation marks omitted). Proof of either "confined," "restrained," or "removed," satisfies the statute.

¶ 40        "As used in [N.C. Gen. Stat. §] 14-39, the term 'confine' connotes some form of imprisonment within a given area, such as a room, a house or a vehicle." *Fulcher*, 294 N.C. at 523, 243 S.E.2d at 351. "The term 'restrain,' while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement." *Id*. Our Supreme Court further explains a victim, "by the threatened use of a deadly weapon, is restricted in his freedom of motion, is restrained within the meaning of this statute." *Id*.

¶ 41        A removal requires some asportation of the victim, although a specific distance or duration is not required. *Id*. at 522, 243 S.E.2d at 351 (citations omitted).

### 2. *Indictment Differing from Jury Instructions*

¶ 42        Defendant relies on *State v. Bell* to support his contention the indictment and jury instruction were in error. In *Bell*, the issue before this Court was whether the

trial court erred in a jury instruction that differed from the indictment. "The indictment against defendant . . . alleged both confinement and restraint, but did not allege removal." *State v. Bell*, 166 N.C. App. 261, 263, 602 S.E.2d 13, 15 (2004). The trial court instructed the jury "they could convict defendant on the theory of either restraint or removal." *Id.* The jury found the defendant guilty, but the verdict form did not indicate which theory the jury found. *Id.* "Our Supreme Court has held that such a variance between the indictment and the jury charge constitutes error. Whether this error constitutes plain error depends on the nature of the evidence introduced at trial." *Id.* (citations omitted).

¶ 43        In *Bell*, this Court explained this error is highly fact sensitive and based on which theory is misrepresented and what the facts tend to show. *Id.* This Court explains further:

> In *State v. Gainey,* the indictment charged on the theory of removal, but the judge instructed the jury on the theories of restraint and removal. *State v. Gainey,* 355 N.C. 73, 94, 558 S.E.2d 463, 477, *cert. denied,* 537 U.S. 896, 154 L.Ed.2d 165 (2002). Our Supreme Court held that "[t]he evidence in the case *sub judice* is not highly conflicting," and found there to be no plain error. *Id.* at 94-95, 558 S.E.2d at 477-78.

*Id.* at 263-64, 602 S.E.2d at 15. In *Bell*, the evidence of how the victim was restrained or removed was highly disputed, and this Court held the instructional error constituted plain error. *Id* at 265, 602 S.E.3d at 16.

¶ 44    The facts before us are similar to the facts in *Gainey*. Defendant was indicted under one theory and convicted of second-degree kidnapping after the jury received instructions on other theories, rather than just those alleged in the indictment.

¶ 45    The State presented evidence tending to show Saunders' confinement, restraint and removal by Defendant. Defendant illegally entered Saunders' home, entered his bedroom and motioned at gunpoint for Saunders to move from his bedroom to the living room. Defendant followed Saunders to the living room while still holding him under gunpoint. That action alone meets the statutory definition of "confine." *See Fulcher* 294 N.C. at 523, 243 S.E.2d at 351. Defendant stood over Saunders with a gun pointed at him prior to and throughout the duration of the shooting of Baeza and the armed robbery of Saunders. This removal and restraint included all the meanings of confine. *Id.*

¶ 46    Defendant does not show a probability that a reasonable jury would have found Saunders was removed and restrained but was not confined. As noted above, "[t]he term 'restrain' while *broad enough to include a restriction upon freedom of movement by confinement*, connotes also such a restriction, by force, threat or fraud, without a confinement." *Id.* (emphasis supplied).

¶ 47    Substantial evidence supports Defendant's conviction for kidnapping under the theory of confinement, restraint, or removal. The trial court should have properly instructed the jury on confinement, but the failure to instruct on "confinement" under

these facts does not rise to the level of plain error. "We cannot conclude that had the trial court instructed the jury that the defendant had to 'confine' the victim to be guilty . . . this would have tilted the scales in favor of defendant." *Gainey*, 355 N.C. at 95, 558 S.E.2d at 478.

¶ 48        It is not probable that absent the instructional error, the jury would have returned a different verdict. *Lawrence*, 365 N.C. at 518, 723 S.E.2d at 334. Defendant has failed to show probability of a different result under plain error review in the jury instruction as given to award a new trial. "The evidence shows that defendant confined, restrained and removed the victim . . . there is no reasonable basis for us to conclude that any different combination of the terms 'confine,' 'restrain' or 'remove' . . . would have altered the result." *Gainey*, 355 N.C. at 95, 558 S.E.2d at 478.

## VII.    Conclusion

¶ 49        The trial court correctly denied Defendant's motion to dismiss the second-degree kidnapping charge. The jury properly concluded beyond a reasonable doubt that Saunders' restraint was separate and distinct from the armed robbery, and that he was exposed to "greater danger" in addition to what occurred during the robbery from his person with a dangerous weapon. *Stokes*, 367 N.C. at 481, 756 S.E.2d at 37.

¶ 50        Defendant has failed to show plain error in the jury instruction to warrant a new trial. Defendant received a fair trial, free from prejudicial errors he preserved and argued. *It is so ordered.*

NO ERROR.

Judge HAMPSON concurs.

Judge MURPHY concurs in result only.

No. COA20-177 – *State v. Stokley*

MURPHY, Judge, concurring in result only.

¶ 51     While I arrive at the same result as the Majority in upholding Defendant's convictions for robbery with a dangerous weapon and second-degree kidnapping, I write separately to note my vehement disagreement with the Majority's discussion of removal, restraint, and confinement that it relies on in holding "No Error."[1] *Supra* at ¶ 49-50.

¶ 52     Kidnapping is defined in part as follows:

> (a) Any person who shall unlawfully *confine, restrain, or remove* from one place to another, any other person 16 years of age or over without the consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:
>
> . . .
>
> (2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; . . .

---

[1] Under prior naming practices of this Court, I would have referred to my vote as "dissenting in part, and concurring in the judgment." *See Lippard v. Holleman*, 844 S.E.2d 591, 611 (N.C. App.) (McGee, C.J., *concurring in part, dissenting in part, and concurring in the judgment*), *appeal dismissed*, *disc. rev. denied*, 847 S.E.2d 882 (N.C. 2020). However, through its recent order in *Lippard*, 847 S.E.2d 882 (N.C. 2020), our Supreme Court has made clear that although a judge of this Court is opposed to the reasoning and analysis of a majority opinion, it is not proper to entitle the same as a dissent and such an opinion does not confer an appeal of right in accordance with N.C.G.S. § 7A-30(2). *See* N.C.G.S. § 7A-30 (2019) ("[A]n appeal lies of right to the Supreme Court from any decision of the Court of Appeals rendered in a case: . . . . (2) In which there is a dissent when the Court of Appeals is sitting in a panel of three judges."). To the extent that I misconstrue the Supreme Court's recent order regarding the applicability of N.C.G.S. § 7A-30(2), I dissent.

. . .

> (b) There shall be two degrees of kidnapping as defined by
> subsection (a). . . . . If the person kidnapped was released
> in a safe place by the defendant and had not been seriously
> injured or sexually assaulted, the offense is kidnapping in
> the second degree and is punishable as a Class E felony.

N.C.G.S. § 14-39(a)-(b) (2019) (emphasis added). Under N.C.G.S. § 14-39(a), the State

is required to prove a victim was "confine[d], restrain[ed], or remove[d]" by a

defendant. As the Majority correctly notes, "[t]hese are discrete legal terms, having

different meanings, and are stated disjunctively." *Supra* at ¶ 39. The Majority,

however, conflates removal with confinement and restraint throughout its Double

Jeopardy analysis and upholds Defendant's punishments for convictions of robbery

with a dangerous weapon and second-degree kidnapping. *Supra* at ¶ 25, 31-32, 44-

47. Most glaringly, the Majority inappropriately mixes the theory of confinement

with the theory of removal in its discussion of *State v. Irwin* and *State v. Boyce*. *Supra*

at ¶ 25, 30-32. This analysis is not supported by the statutes, caselaw, dicta, or, most

importantly, past analyses of the application of plain error in binding precedent from

this Court and our Supreme Court.

¶ 53        The Majority unconvincingly attempts to distinguish this case from *State v.*

*Irwin*, where our Supreme Court held the trial court erred in denying the defendant's

motion to dismiss the kidnapping charge. *Supra* at ¶ 30-32; *State v. Irwin*, 304 N.C.

93, 103, 282 S.E.2d 439, 446 (1981), *not followed as dicta on other grounds*, *State v.*

*Greene*, 329 N.C. 771, 408 S.E.2d 185 (1991). In *Irwin*, although the defendant was indicted on kidnapping the victim on the theory of removal and restraint, the Supreme Court only analyzed the facts under the removal theory as it was the only theory provided by the trial court for the jury's consideration. *Id.* at 101, 282 S.E.2d at 445 ("[The] [d]efendant assigns as error the trial court's denial of his motion to dismiss the charge of kidnapping. This assignment has merit. The indictment charges [the] defendant with kidnapping [the victim] by removing her from one place to another and restraining her for the purpose of facilitating an armed robbery. The trial judge instructed the jury on the element of removal only, thus withdrawing the issue of restraint from jury consideration. Our discussion, therefore, will be limited to the meaning of the phrase 'remove from one place to another' as used in [N.C.G.S. §] 14-39(a)."). The victim was forced at knifepoint to walk toward the back of the store to obtain drugs from the prescription counter. *Id.* at 103, 282 S.E.2d at 446. "During this time two shots were fired by [the] defendant at the front of the store, causing [his accomplice] to flee. [The victim] was not touched or further restrained. All movement occurred in the main room of the store." *Id.* Our Supreme Court held this removal "was an inherent and integral part of the attempted armed robbery[]" because it was necessary "[t]o accomplish [the] defendant's objective of obtaining drugs . . . ." *Id.*

¶ 54    The Majority holds this case is different from *Irwin* because Defendant's

*removal* of Saunders was not necessary to complete the convicted armed robbery, and therefore was not an inherent part of the robbery. *Supra* at ¶ 32. However, the indictment here provides Defendant kidnapped Saunders only by "unlawfully confining him"; whereas, the defendant in *Irwin* was indicted on removal and restraint and convicted on only the theory of removal. Based on the language in the indictment, our focus must remain on whether the circumstances surrounding the victim's confinement, not his removal from the bedroom, was inherent in the convicted armed robbery.

¶ 55    In *State v. Boyce*, the defendant broke into the victim's home, chased her, and prevented the victim's escape by dragging her back into her home before the onset of the robbery with a dangerous weapon. *State v. Boyce*, 361 N.C. 670, 671, 651 S.E.2d 879, 880-81 (2007). The defendant was indicted for kidnapping on the theories of confinement, restraint, and removal. *Id.* at 671-72, 651 S.E.2d at 881. Our Supreme Court held the restraint and removal were separate from the accompanying felony "and was sufficient to constitute the separate crime of kidnapping under North Carolina law." *Id.* at 674, 651 S.E.2d at 882. However, the defendant in *Boyce* was indicted for kidnapping based on confinement, restraint, and removal. *Id.* at 671-72, 651 S.E.2d at 881. Here, we cannot rely on the holding in *Boyce* even if the evidence supports a consideration that Saunders was removed prior to his confinement because Defendant was only indicted on a theory of confinement and therefore

confinement is the only appropriate theory to consider for the motion to dismiss.

¶ 56        Later, in its analysis of plain error, the Majority reasons "[t]his removal and restraint included all the meanings of confine." *Supra* at ¶ 45. However, the Majority again strays from the issue before us of whether the jury probably would have returned a different verdict had they been instructed only on confinement. *See State v. Lawrence*, 365 N.C. 506, 507, 723 S.E.2d 326, 327 (2012). Confinement does not equate to removal. Removal is a distinct term that differs from restraint and confinement. *See State v. Fulcher*, 294 N.C. 503, 522-23, 243 S.E.2d 338, 351 (1978) (holding removal does not require movement for a substantial distance, and "'confine' connotes some form of imprisonment within a given area . . . . The term 'restrain,' while broad enough to include a restriction upon freedom of movement by confinement, connotes also such a restriction, by force, threat or fraud, without a confinement."). These differences were clearly contemplated by the General Assembly given its use of the different terms to identify theories of kidnapping within N.C.G.S. § 14-39(a). *See State v. Small*, 201 N.C. App. 331, 342, 689 S.E.2d 444, 450 (2009) ("The primary rule of statutory construction is that the intent of the legislature controls the interpretation of a statute."); *Porsh Builders, Inc. v. City of Winston-Salem*, 302 N.C. 550, 556, 276 S.E.2d 443, 447 (1981) ("It is well established that a statute must be considered as a whole and construed, if possible, so that none of its provisions shall be rendered useless or redundant. It is presumed that the legislature

intended each portion to be given full effect and did not intend any provision to be mere surplusage.").

¶ 57        Equating removal to confinement, as the Majority has, goes against our binding precedent and jurisprudence.  In numerous kidnapping cases we, along with our Supreme Court, have engaged in a plain error analysis regarding the theories of kidnapping.  *See State v. Tucker*, 317 N.C. 532, 536-37, 346 S.E.2d 417, 420 (1986) (holding plain error where the jury was instructed on restraint, a theory not charged in the indictment); *State v. Lucas*, 353 N.C. 568, 588, 548 S.E.2d 712, 726 (2001) (holding error, but not plain error, where the trial court failed to instruct on the theory of confinement alleged in the indictment but rather instructed the jury on the theory of removal), *overruled in part on other grounds*, *State v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005), *withdrawn*, 360 N.C. 569, 635 S.E.2d 899 (2006); *State v. Clinding*, 92 N.C. App. 555, 562-63, 374 S.E.2d 891, 895 (1989) (holding no plain error where the indictment alleged removal and confinement but the jury was instructed on restraint); *State v. Smith*, 162 N.C. App. 46, 51-53, 589 S.E.2d 739, 743-744 (2004) (holding plain error where the indictment alleged removal but the trial court instructed the jury on confinement, restraint, or removal).  If the Majority was correct, then there would be no difference between confinement, restraint, and removal under N.C.G.S. § 14-39(a), and plain error analysis would be unnecessary when a trial court instructs the jury on a theory not alleged in the indictment.

Accordingly, given the Majority's conflation of removal, restraint, and confinement, I cannot concur with its analysis and reasoning.

¶ 58        While I could not disagree more with the Majority's chosen path in reaching the result of no error and no plain error, I also conclude the trial court did not err in denying Defendant's motion to dismiss and erred, but did not commit plain error in instructing the jury on removal and restraint where the indictment only referred to confinement.

¶ 59        The Majority has accurately presented the facts of this case and the standards of review. *Supra* ¶ 2-16, 19, 37. As for Defendant's motion to dismiss, the evidence taken in the light most favorable to the State demonstrates that not only was Saunders the victim of the indicted and convicted armed robbery whereby his pockets were rifled through and his cell phone was taken as the assailants left, he was also a victim of an earlier attempted robbery whereby the assailants confined him on the floor while they attempted to discern the location of Baeza's large sums of money and take the money by force.

¶ 60        There was substantial evidence the armed robbery of Saunders' cell phone was a distinct crime from the earlier attempted armed robbery of Baeza's large sums of money. During this initial attempted armed robbery, Saunders was "confin[ed] . . . without his consent and for the purposes of facilitating the commission of a felony, [r]obbery with a [d]angerous [w]eapon" as indicted. The import of N.C.G.S. § 14-

39(a)(2) is that the confinement was done in facilitating any felony and, although the initial attempted armed robbery seeking Baeza's large sums of money was not completed, it may serve as the predicate felony for second-degree kidnapping as indicted. *See State v. Cole*, 199 N.C. App. 151, 160, 681 S.E.2d 423, 429 ("[A] defendant need not be convicted of the underlying felony in order to be convicted of kidnapping."), *disc. rev. denied*, 363 N.C. 658, 686 S.E.2d 679 (2009), *cert. denied*, 368 N.C. 605, 780 S.E.2d 833 (2015). Nothing in the trial court's unchallenged jury instructions limited the jury's consideration of kidnapping to the confinement during the later armed robbery of Saunders' cell phone from his pocket. In the light most favorable to the State, substantial evidence was offered as to the commission of the second-degree kidnapping during a separate attempted armed robbery from the convicted armed robbery. Under these circumstance, Defendant's punishment for convictions of both robbery with a dangerous weapon and second-degree kidnapping under the theory of confinement do not violate Double Jeopardy and the trial court did not err in denying his motion to dismiss.

¶ 61    Turning to Defendant's argument as to plain error, I agree the trial court's instruction was in error and did not accurately track the grand jury's indictment. Our courts have been presented with this issue several times and, in considering whether the error amounts to plain error, we must first determine whether "the jury probably would have returned a different verdict had the error not occurred."

*Lawrence*, 365 N.C. at 507, 723 S.E.2d at 327. Here, this issue is complicated by the consideration of confinement and the potential impact on Defendant's right to be free from Double Jeopardy. As discussed above, there was substantial evidence from which the jury could determine Defendant confined Saunders during the first attempted armed robbery of Baeza's money, as well as the subsequent armed robbery of Saunders' cell phone from his pocket. This evidence defeats the proposition "the jury probably would have returned a different verdict" had the trial court properly instructed the jury only on confinement. *Id.* Further, in an attempt to show a probably different verdict had the error not occurred, Defendant argues his alibi testimony demonstrates the State's case was not overwhelming. Defendant's reliance on this evidence is misplaced as the jury rejected his alibi defense when it found him guilty of armed robbery, a conviction not substantively challenged on appeal. The trial court's error does not amount to plain error as the evidence here does not permit us to conclude "the jury probably would have returned a different verdict had the error not occurred." *Id.*

I respectfully concur in the result only.